**SERGEANT OIL & GAS CO., INC., Plaintiff,**

v.

**NATIONAL MAINTENANCE & REPAIR, INC. and Kimble Lehman, Defendants.**

Civ. A. No. H–93–1613.

United States District Court, S.D. Texas.

Aug. 30, 1994.

K. Allan Davis, pro se.

J. Brantley Durrett, III, Houston, TX, for plaintiff.

James V. Hammett, Jr., Scott, Douglass & Luton, Houston, TX,. Harold A. Odom, III, Vinson & Elkins, Quentin Doug Sigel, Scott Douglass & Luton, Houston, TX, for defendants.

## MEMORANDUM AND ORDER

CRONE, United States Magistrate Judge.

Pending before the court is Defendants National Maintenance Repair ("NMR") and Kimble Lehman's ("Lehman") Motion for Summary Judgment (Docket Entry # 43) and Amended Motion for Summary Judgment (Docket Entry # 56). Defendants seek summary judgment on Sergeant Oil & Gas Co., Inc.'s ("SOG") claims of breach of contract, breach of express warranty, fraud, negligence, and various violations of the Texas Deceptive Trade Practices and Consumer Protection Act ("DTPA"). TEX.BUS. & COM. CODE ANN. § 17.41 et seq. (Vernon 1987).

Having reviewed the motions, the submissions of the parties, the pleadings, and the applicable law, this court is of the opinion that defendants' motion for summary judgment should be granted in part and denied in part.

## I. Background.

NMR provides barge cleaning operations for vessels serving the petrochemical industry along the Mississippi River. SOG and NMR entered into an agreement whereby NMR would, in effect, give SOG the "fuel blend" known as "barge slop," generated as a by-product of NMR's operations, provided that SOG would assume the cost of transporting the fuel blend from Illinois to Louisiana. The sales agreement, on its face, lists a price for the fuel blend of $15,000.00, but allows SOG to deduct up to $15,000.00 for transportation costs. Because SOG deducted the maximum amount allowable, NMR received no money in return for the sale of the fuel blend.

SOG initiated this action alleging that the fuel blend it obtained from NMR did not comport with the representations made by Lehman, the vice president of NMR. SOG claims that Lehman represented that the fuel blend possessed the qualities set forth in the Material Safety Data Sheet ("MSDS"), specifically, that the water content would be between zero and ten percent. SOG claims that this misrepresentation of the water content caused it to incur lost profits on the resale of the fuel blend.

SOG further alleges that Lehman misrepresented the time required to load the fuel blend onto SOG's nominated barge, owned by Coastal Towing Co. SOG claims that Lehman represented that the barge could be loaded within 18 to 24 hours. The actual loading time, however, was approximately 52.5 hours. SOG claims that this delay caused it to incur excess demurrage fees.

Finally, SOG alleges that Lehman failed to inform SOG of the presence of extraneous solid materials, or "trash," within the fuel blend which, when loaded onto SOG's nominated barge, caused extensive damage to the barge's pump. SOG claims it incurred substantial repair and cleaning costs and excess demurrage fees as a result of the undisclosed trash.

Because the parties have admitted that genuine issues of material fact exist with respect to the plaintiff's claim of breach of contract, this claim is not encompassed within the motion for summary judgment. Furthermore, the parties agree that any breach of contract claim in excess of $15,000.00 is barred by the limitations of liability clause contained in the sales agreement.

## II. Analysis.

### A. The Applicable Standard.

Rule 56(c) provides that "[summary] judgment ... shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as

a matter of law." FED.R.CIV.P. 56(c). The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Williams v. Adams,* 836 F.2d 958, 960 (5th Cir.1988). Once a proper motion has been made, the non-moving party may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts showing the existence of a genuine issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. at 322–23, 106 S.Ct. at 2552–53; *Anderson v. Liberty Lobby,* 477 U.S. at 257, 106 S.Ct. at 2514; *Topalian v. Ehrman,* 954 F.2d 1125, 1131 (5th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 82, 121 L.Ed.2d 46 (1992). Summary judgment is mandated if the nonmovant fails to make a showing sufficient to establish the existence of an element essential to the nonmovant's case on which it bears the burden of proof at trial. *Celotex v. Catrett,* 477 U.S. at 322, 106 S.Ct. at 2552.

## B. *Breach of Express Warranty.*

■ With respect to the quality of the fuel blend at issue in this transaction, the contract between the parties provides "Quality per MSDS sheets already supplied by seller." SOG claims that the Material Safety Data Sheet ("MSDS"), oral statements made by Lehman, and the quality requirement contained in the sales agreement created an express warranty. Lehman testified in his deposition, however, that an MSDS should be relied upon only by the chemist running the laboratory analysis. Ed Anderson, the proprietor of an engineering and construction abatement business and the defendants' contact in Houston, similarly testified that only a chemist should rely on MSDS data. Anderson, however, stated that he had no experience with the buying and selling of petroleum products and was not qualified to render an opinion on the subject. SOG has

not disputed this testimony. SOG contends, however, and its actions suggest, that it did rely on the MSDS. Therefore, genuine issues of material fact exist as to whether the MSDS was a mere formality provided for safety reasons, or whether it was reasonable for SOG to rely on the data contained in it. Moreover, it is unclear why Lehman signed the sales agreement containing the quality requirement "as per MSDS," if he knew, or had reason to know, that the MSDS was an unreliable source of data, as he asserts. Accordingly, defendants' motion for summary judgment with respect to the breach of express warranty claim is denied.

The parties have stipulated, however, that any possible recovery on this claim is subject to the limitations of liability clause contained in the sales agreement, which precludes recovery in excess of $15,000.00 for breach of express warranty.

## C. *Fraud.*

### (a) *Misrepresentation of Water Content in the Fuel Blend.*

■ SOG claims that the defendants, through the MSDS and the sales agreement, misrepresented the water content of the fuel blend. The MSDS, which was prepared by Lehman, lists the water content as being between zero and ten percent. A review of the record as a whole reveals that there are genuine issues of fact as to whether Lehman, when he made the representations concerning water content, which later proved to be incorrect, made them knowing of their falsity or with reckless disregard of the truth. The fact that Lehman, who is not a qualified chemist, "created" the MSDS, seems somewhat irregular. Furthermore, there is conflicting testimony as to whether Lehman told SOG that the first two samples of fuel blend were or were not representative of the actual fuel blend to be sold. Thus, with respect to this claim, the motion for summary judgment is denied.

### (b) *Misrepresentation of Barge Loading Time.*

■ There are no provisions in the written contract regarding loading time. Therefore,

the merger clause bars the introduction of prior or contemporaneous oral statements made with respect to this issue.

■ Assuming, *arguendo*, that the merger clause did not preclude the introduction of prior oral statements, pure expressions of opinion, as a general rule, are not actionable as common law fraud. To be actionable, a representation must be one of material fact, not opinion. *See Wilson v. Jones*, 45 S.W.2d 572, 574 (Tex.Comm'n App. 1932, judgm't adopted); W. PROSSER, LAW OF TORTS § 109, at 720–24 (4th ed. 1971).

■ There are narrow exceptions to this rule. An opinion may constitute fraud if the speaker has knowledge of its falsity. *T.M. Brooks v. Parr*, 507 S.W.2d 818, 820 (Tex.Civ. App.—Amarillo 1974, no writ); *Texas Indus. Trust, Inc. v. Lusk*, 312 S.W.2d 324, 327 (Tex.Civ.App.—San Antonio 1958, writ ref'd). An expression of opinion may also constitute fraud if the speaker purports to have special knowledge of facts that will occur or exist in the future. *Ratcliff v. Trenholm*, 596 S.W.2d 645, 651 (Tex.Civ.App.—Tyler 1980, writ ref'd n.r.e.); *Wright v. Carpenter*, 579 S.W.2d 575, 580 (Tex.Civ.App.—Corpus Christi 1979, writ ref'd n.r.e.). Under Texas law, however, recklessness or special knowledge must exist to establish a fraud action based on pure expressions of opinion. *Trenholm v. Ratcliff*, 646 S.W.2d 927, 930 (Tex.1983).

■ In his deposition, Williams testified that Lehman stated that he "guessed or assumed or estimated or thought" the barge loading time would be 18 to 24 hours. There is no evidence to support an assertion that Lehman possessed superior knowledge or was reckless when he made these statements. Lehman's representations were merely statements of opinion and conjecture, and do not support a cause of action for fraud. *See* TEX.BUS. & COM.CODE ANN. § 27.01 (Vernon 1987).

Thus, because the merger clause bars the introduction of statements not incorporated into the final contract and because pure statements of opinion are not actionable fraud, the motion for summary judgment is granted with respect to this claim.

#### (c) *Nondisclosure of Trash in the Fuel Blend.*

■ When no representations are made, the failure to disclose information does not constitute fraud in the absence of a fiduciary or other special relationship between the parties. *Crawford Painting & Drywall Co. v. J.W. Bateson Co.*, 857 F.2d 981, 985 (5th Cir.1988), *cert. denied*, 488 U.S. 1035, 109 S.Ct. 850, 102 L.Ed.2d 982 (1989); *Tempo Tamers, Inc. v. Crow–Houston Four, Ltd.*, 715 S.W.2d 658, 669 (Tex.App.—Dallas 1986, writ ref'd n.r.e.).

■ A review of the record reveals that Lehman made no representations with respect to the presence of trash in the fuel blend. He merely failed to reveal its presence. Here, the evidence establishes that SOG and NMR had a purely business relationship and dealt with each other at arms length. Moreover, deposition testimony by both Lehman and Williams shows that neither party has reason to believe that Lehman knew of the presence of the trash, yet failed to disclose it. Thus, there was no fiduciary relationship, no fiduciary duty, and no fraud. *See Crawford Painting & Drywall Co. v. J.W. Bateson Co.*, 857 F.2d at 986; *Richman Trusts v. Kutner*, 504 S.W.2d 539, 544–45 (Tex.Civ.App.—Dallas 1973, writ ref'd n.r.e.). Accordingly, defendants' motion for summary judgment is granted with respect to this claim.

#### D. *Negligence.*

SOG claims that the defendants were negligent in (1) failing to use strainers or filters when loading the fuel blend on the barge, (2) representing the fuel blend to be of the quality described on the MSDS, (3) failing to disclose to SOG that the defendants had speculated as to the true composition of the fuel blend, (4) failing to provide SOG with representative samples of the fuel blend, (5) failing to disclose to SOG that the defendants did not provide them with representative samples, (6) representing to SOG that the fuel blend could be loaded in 18 to 24 hours, and (7) breaching the contract.

■ An allegedly negligent failure to perform a contract, standing alone, is not

recognized as an actionable tort in Texas. *Southwestern Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494 (Tex.1991); *Montgomery Ward & Co. v. Scharrenbeck*, 146 Tex. 153, 157, 204 S.W.2d 508, 510 (Tex.1947). Instead, the plaintiff must show that the defendant breached a duty arising "independent of the fact that a contract exists between the parties." *Southwestern Bell Tel. Co. v. De-Lanney*, 809 S.W.2d at 494; *Janicek v. KIKK, Inc.*, 853 S.W.2d 780, 782 (Tex.App.— Houston [14th Dist.] 1993, writ denied); *River Consulting, Inc. v. Sullivan*, 848 S.W.2d 165, 170 (Tex.App.—Houston [1st Dist.] 1992, writ denied); *United Serv. Auto. Ass'n v. Pennington*, 810 S.W.2d 777, 783 (Tex.App.— San Antonio 1991, writ denied). A duty arises independent of a contract when the duty is imposed by law rather than by the contract. *Southwestern Bell Tel. Co. v. De-Lanney*, 809 S.W.2d at 494; *United Serv. Auto. Ass'n v. Pennington*, 810 S.W.2d at 783.

In determining whether a party has breached a legally imposed duty or a contractual duty, the court examines the nature of the injury alleged by the plaintiff. *Southwestern Bell Tel. Co. v. DeLanney*, 809 S.W.2d at 494; *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex.1986). When the injury alleged is only economic loss arising from a breach of contract, the duty breached is purely contractual. *Southwestern Bell Tel. Co. v. DeLanney*, 809 S.W.2d at 494; *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d at 618; *Mid Continent Aircraft Corp. v. Curry County Spraying Serv.*, 572 S.W.2d 308, 312 (Tex.1978).

In its second, third, fourth, fifth, sixth, and seventh negligence claims, SOG alleges injuries of lost profits and demurrage charges. The lost profits and demurrage charges are economic losses resulting from NMR's failure to perform the contract. See *Southwestern Bell Tel. Co. v. DeLanney*, 809 S.W.2d at 494. In essence, SOG is seeking to recover benefit of the bargain damages arising from a breach of contract. *Id.* Therefore, SOG's claims, although pleaded in negligence, sound primarily in contract. The defendants' duty to reimburse SOG for these damages, if any, arises not from a common

law duty of reasonable care, but from the parties' agreement, from other torts such as fraud and misrepresentation, or from statutory violations. See *River Consulting, Inc. v. Sullivan*, 848 S.W.2d at 170. Thus, SOG has failed to allege a negligence claim arising independent of the parties' agreement. Therefore, with respect to SOG's second, third, fourth, fifth, sixth, and seventh negligence claims, the defendants' motion for summary judgment is granted.

In its first negligence claim, however, SOG alleges that it has incurred the costs of repairing the transporting barge, as well as excess demurrage fees, due to NMR's negligent failure to use strainers or filters when loading the fuel blend onto the barge. Courts recognize an independent common law duty not to create a dangerous condition or to damage another's property when performing a contract. See, e.g., *Colonial Sav. Ass'n v. Taylor*, 544 S.W.2d 116, 119 (Tex. 1976); *Fox v. Dallas Hotel Co.*, 240 S.W. 517, 520 (Tex.1922); *Crosbyton Seed Co. v. Mechura Farms*, 875 S.W.2d 353, 360 (Tex. App.—Corpus Christi 1994, no writ) (construing *Southwestern Bell Tel. Co. v. DeLanney*, 809 S.W.2d at 495–96); RESTATEMENT (SECOND) OF TORTS § 323 (1965). Therefore, SOG has alleged a breach of a duty which arises independent of the parties' contract. As a result, NMR may be held liable in tort for the costs of repairing the barge and the excess demurrage fees, if SOG proves that NMR was negligent in loading the barge and this negligence caused the damages in question. A review of the record reveals that there are genuine issues of material fact as to whether the defendants were negligent in failing to use strainers or filters when loading the fuel blend to eliminate the extraneous solids prior to contamination of the barge. Consequently, defendants' motion for summary judgment on this claim is denied.

E. *Negligent Misrepresentation.*

(a) *Misrepresentation of Water Content in the Fuel Blend.*

SOG claims that the defendants negligently misrepresented the water content of the fuel blend through their inclusion of

inaccurate data on the MSDS, their submission of non-representative fuel blend samples, their failure to disclose the non-representative nature of the samples, and their failure to disclose their speculations as to the true composition of the fuel blend. Negligent misrepresentation occurs when: (1) a representation is made by a defendant in the course of his business, or in a transaction in which he has a pecuniary interest; (2) the defendant supplies "false information" for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffers pecuniary loss by justifiably relying on the representation. *Federal Land Bank Ass'n v. Sloane,* 825 S.W.2d 439, 442 (Tex.1991); *Airborne Freight Corp. v. C.R. Lee Enter.,* 847 S.W.2d 289, 294 (Tex.App.—El Paso 1992, writ denied). In the instant case, there are genuine issues of material fact as to whether the defendants failed to exercise reasonable care when supplying inaccurate MSDS data and non-representative samples to SOG and whether SOG relied on this information in deciding to purchase the fuel blend. Accordingly, defendants' motion for summary judgment is denied with respect to this claim.

### (b) *Misrepresentation of Barge Loading Time.*

■ SOG also claims that the defendants negligently misrepresented the barge loading time. Negligent misrepresentation does not occur when a defendant simply makes a guess as to a future, unknown event. *City of Beaumont v. Excavators & Constructors, Inc.,* 870 S.W.2d 123, 138 (Tex.App.—Beaumont 1993, writ requested). Rather, a defendant must supply false information in order to incur liability under this doctrine. *Federal Land Bank Ass'n v. Sloane,* 825 S.W.2d at 442; *City of Beaumont v. Excavators & Constructors, Inc.,* 870 S.W.2d at 138. In addition, the "false information" must entail a misstatement of existing fact. *Airborne Freight Corp. v. C.R. Lee Enter.,* 847 S.W.2d at 294.

■ In the instant case, SOG offers no evidence to show that NMR supplied it with false information. Instead, SOG repeatedly asserts that Lehman told Williams that the barge could be loaded in 18 to 24 hours and it detrimentally relied on this statement. Yet, in his deposition, Williams admits that Lehman only "estimated or assumed or guessed or thought" that the barge could be loaded in 18 to 24 hours. Just as the statements at issue in *City of Beaumont,* Lehman's "utterances were guesses as to future, unknown happenings; they were not information" and, as such, are not actionable under a theory of negligent misrepresentation. *City of Beaumont v. Excavators & Constructors, Inc.,* 870 S.W.2d at 138. Moreover, having been informed that the barge loading time figure was merely an estimate or a guess, SOG could not have justifiably relied on Lehman's statements as a precise measure of the required loading time. Consequently, defendants are entitled to summary judgment on this claim.

### (c) *Nondisclosure of Trash in the Fuel Blend.*

■ Under the doctrine of negligent misrepresentation, the defendant must supply false information for the guidance of others in their business. *Federal Land Bank Ass'n v. Sloane,* 825 S.W.2d at 442; *Airborne Freight Corp. v. C.R. Lee Enter.,* 847 S.W.2d at 294; *City of Beaumont v. Excavators & Constructors, Inc.,* 870 S.W.2d at 138. The false information must involve a misstatement of existing fact. *Airborne Freight Corp. v. C.R. Lee Enter.,* 847 S.W.2d at 294. Here, both parties agree that Lehman did not make any affirmative representations concerning the presence or absence of trash in the fuel blend. In its common law fraud claim, SOG alleges merely that Lehman failed to disclose the presence of trash in the fuel blend. Without a disclosure or representation, there could be no "supplying" of false information to support a negligent misrepresentation claim. As a result, summary judgment is granted with respect to this claim.

### F. *Gross Negligence.*

■ SOG further claims that it is entitled to exemplary damages because the defendants were grossly negligent in failing to

disclose their speculations as to the true composition of the fuel blend and in failing to disclose the inaccuracy of the submitted test samples. The Texas Supreme Court recently clarified the test for gross negligence: (1) viewed objectively from the standpoint of the actor, the act or omission must involve an extreme degree of risk, considering the probability and magnitude of the potential harm to others, and (2) the actor must have actual, subjective awareness of the risk involved, but nevertheless proceed in conscious indifference to the rights, safety, or welfare of others. *Transportation Ins. Co. v. Moriel,* 879 S.W.2d 10, 23 (Tex.1994).

 Under the court's analysis, the "extreme degree of risk" component is a "threshold significantly higher than the objective 'reasonable person' test for negligence." *Id.* at 22. The "extreme risk" prong is not satisfied merely by a remote possibility of injury, or even a high probability of minor harm. *Id.* Instead, the defendant's conduct must be unjustifiable and likely to cause serious injury. *Id.* The likelihood of serious injury is determined by examining the events and circumstances from the viewpoint of the defendant at the time the events occurred, without viewing matters in hindsight. *Id.* at 23.

 In the instant case, the defendants' failure to disclose its speculations about the fuel blend's composition and its submission of nonrepresentative samples, while potentially actionable, are not likely to cause serious harm. The only foreseeable harm in these circumstances is the possibility that the fuel blend would not satisfy SOG's needs or would not be further marketable by SOG. While these may qualify as harm, they clearly are not sufficiently serious to satisfy the "extreme risk" component of gross negligence. Rather, they are typical consequences of a commercial transaction gone awry which may be remedied through compensatory damages. A breach of a contract, although inconvenient and annoying, is not punishable as gross negligence, even if the breach is intentional. *Id.* at 23; *Jim Walter Homes, Inc. v. Reed,* 711 S.W.2d at 618. Thus, SOG has failed to state a cause of action for gross negligence and, therefore, cannot recover exemplary damages in this proceeding. Accordingly, defendants are entitled to summary judgment on plaintiff's gross negligence claim.

### G. DTPA Claims.

#### 1. Causing Confusion—§ 17.46(b)(2):

Causing confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services.

##### (a) Misrepresentation of Water Content in the Fuel Blend.

 SOG claims that confusion was created when NMR and Lehman allegedly based the data contained in the MSDS on pure speculation and submitted non-representative fuel blend samples to SOG. There is conflicting deposition testimony about whether Lehman indicated to SOG that the samples were or were not representative of the fuel blend to be sold or merely representative of barge slop generally, thus causing confusion as to the source of the fuel blend purchased by SOG. Therefore, genuine issues of material fact exist with respect to the claim of misrepresentation of the water content of the fuel blend under § 17.46(b)(2). Accordingly, the motion for summary judgment is denied.

##### (b) Misrepresentation of Barge Loading Time.

 SOG claims that Lehman caused confusion when he misrepresented the barge loading time. Lehman informed SOG that the pumps to be used to load the barge were portable and were not new. Lehman offered his opinion regarding the time required to load the barge. He never made any claims about the "source, sponsorship, approval, or certification" of the pumps. Thus, because the facts do not fit within the parameters of the cause of action contemplated by § 17.-46(b)(2) of the DTPA, the motion for summary judgment is granted.

##### (c) Non-disclosure of Trash in the Fuel Blend.

 The Supreme Court of Texas has held that the failure to disclose facts by one who has no knowledge of those facts is not a

false, misleading, or deceptive act or practice, and therefore cannot serve as a basis for liability under the DTPA. *Robinson v. Preston Chrysler–Plymouth, Inc.,* 633 S.W.2d 500, 502 (Tex.1982). There is a distinction between a misrepresentation and a failure to disclose information. *Id.* When a seller makes representations to the buyer, he is under a duty to know if his statements are true. *Id.* However, no such duty to know the facts are true arises when the seller does not make representations, but merely fails to reveal information which he does not know. *Id.*

In the instant case, there is no factual dispute regarding the knowledge of trash in the fuel blend. Lehman testified in his deposition that he had no knowledge of the existence of any trash in the fuel blend until he received a telephone call from John Williams, a former vice president of SOG, in which Williams said, "Hey, Guy, there's [sic] some solids in there." Williams testified in his deposition that there is no evidence to suggest that Lehman had any knowledge of the trash prior to the telephone call, and there is no basis for concluding otherwise. Because Lehman had no knowledge of the presence of the solid material in the fuel blend, he had no duty to disclose its existence. Consequently, the motion for summary judgment is granted with respect to this claim.

2. *Factual Misrepresentation—§ 17.-46(b)(5) and § 17.46(b)(7):*

Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, quantities which they do not have.

Representing that goods and services are of a particular standard, quality, or grade, or that goods are of a particular style, model, if they are of another.

(a) *Misrepresentation of Water Content in the Fuel Blend.*

SOG contends that defendants factually misrepresented the water content of the fuel blend through furnishing an inaccurate MSDS, which, in turn, was incorporated in the quality provision of the sales contract.

Under the DTPA, a defendant may be held liable for deceptive trade practices even if the defendant did not know that the representations were false or did not intend to deceive anyone. *Eagle Properties, Ltd. v. Scharbauer,* 807 S.W.2d 714, 724 (Tex.1990); *Pennington v. Singleton,* 606 S.W.2d 682, 690 (Tex.1980). Sections 17.46(b)(5) and (7) are designed to ensure accurate descriptions of goods and services, and cover both general and specific descriptions. *Id.* Thus, misrepresentations which do not necessarily constitute common law fraud may be actionable under the DTPA. *See Smith v. Baldwin,* 611 S.W.2d 611, 616 (Tex.1980). As discussed above, genuine issues of material fact exist regarding defendants' representations concerning the water content of the fuel blend. Thus, the motion for summary judgment is denied.

(b) *Misrepresentation of Barge Loading Time.*

Misrepresentations, so long as they are of a material fact and not merely "puffing" or opinion, are actionable under the DTPA. *Pennington v. Singleton,* 606 S.W.2d at 687. Whether a statement constitutes merely an expression of opinion or "puffing," or an actionable misrepresentation depends on several factors, including the specificity of the statement and the comparative levels of the buyer's and seller's knowledge concerning the subject matter of the transaction. *Padgett v. Bert Ogden Motor's Inc.,* 869 S.W.2d 532, 535 (Tex.App.—Corpus Christi 1993, writ denied); *Angelo Broadcasting, Inc. v. Satellite Music Network, Inc.,* 836 S.W.2d 726, 733 (Tex.App.—Dallas 1992, writ denied); *Bryant v. Transcontinental Gas Pipe Line Corp.,* 821 S.W.2d 187, 190 (Tex. App.—Houston [14th Dist.] 1991, writ denied).

In the instant case, deposition testimony reveals that Lehman's statements about barge loading time were non-specific and purely statements of opinion. Williams understood that Lehman had merely "guessed or assumed or estimated" the time requirement. While the defendants are more knowledgeable about the barge clean-

ing business, this was the first time either party had engaged in a transaction of this sort. Therefore, it cannot be said that the defendants were disparately more knowledgeable about the subject matter of this transaction. Lehman's statements about barge loading time were merely "puffing" or opinion, and, thus, are not actionable under the DTPA. Hence, with regard to this claim, the motion for summary judgment is granted.

### (c) *Nondisclosure of Trash in the Fuel Blend.*

■ A misrepresentation is a positive act, as distinguished from a failure to disclose, which is an omission. *Robinson v. Preston Chrysler–Plymouth, Inc.,* 633 S.W.2d at 502. It is undisputed that Lehman made no statements about trash in the fuel blend. Therefore, defendants could not have made any factual misrepresentations actionable under §§ 17.46(b)(5) or (7) concerning the presence of trash in the fuel blend. Accordingly, defendants' motion for summary judgment is granted with respect to this claim.

### 3. *Misrepresentations about the Agreement—§ 17.46(b)(12) and § 17.46(b)(19):*

Representing that an agreement confers or involves rights or remedies which it does not have or involve, or which are prohibited by law.

Representing that a guarantee or warranty confers or involves rights or remedies which it does not have or involve, provided, however, that nothing in this subchapter be construed to expand the implied warranty of merchantability as defined in Sections 2.314 through 2.318 of the Business & Commerce Code to involve obligations in excess of those which are appropriate to the goods.

■ The plaintiff, not the defendants, drafted the sales agreement. The sales agreement was SOG's standard sales contract, containing boilerplate language. Williams, a party to the transaction, admitted in his deposition that the defendants made no representations about the agreement drafted by SOG. In fact, Williams testified that he had never read the contract's boilerplate language.

SOG's merely conclusory allegations concerning purported misrepresentations about the agreement are not competent to defeat summary judgment. Thus, with regard to the claims alleging misrepresentations about the agreement, defendants' motion for summary judgment is granted.

### 4. *Failure to Disclose—§ 17.46(b)(23):*

Failing to disclose information concerning the goods or services which are known at the time of the transaction if such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed.

### (a) *Misrepresentation of Water Content in the Fuel Blend.*

■ There is conflicting testimony about whether Lehman knew, yet failed to disclose, information concerning the presence of the water in the fuel blend. There is likewise conflicting testimony about whether Lehman disclosed to Williams that the first two fuel blend samples sent to SOG were non-representative. It is also unclear whether Lehman disclosed the irregular method by which he created the MSDS. Thus, genuine issues of material fact exist with respect to this issue, precluding the entry of summary judgment.

### (b) *Misrepresentation of Barge Loading Time and Nondisclosure of Trash in the Fuel Blend.*

SOG does not refute Lehman's testimony that he disclosed all that he knew about barge loading times. SOG was made fully aware that the pumps were portable, that they were not new, and that Lehman's time estimate was merely a guess.

Furthermore, there is no factual dispute and no evidence in the record which suggests that Lehman had knowledge of the presence of trash in the fuel blend before the sales transaction was consummated. As discussed above, the failure to disclose facts about which the seller does not know cannot give

rise to liability under the DTPA. *Robinson v. Preston Chrysler–Plymouth, Inc.*, 633 S.W.2d at 502.

The statute is not open-ended, but requires an intentional omission of a material fact by a seller for the purpose of "duping" the consumer. *Sidco Prod. Mktg., Inc. v. Gulf Oil Corp.*, 858 F.2d 1095, 1099 (5th Cir.1988) (quoting *Parks v. U.S. Home Corp.*, 652 S.W.2d 479, 485 (Tex.App.—Houston [1st Dist.] 1983, writ dism'd w.o.j.)). There is no evidence in the record that either NMR or Lehman intentionally omitted material information with regard to barge loading time or trash in the fuel blend with a nefarious motive. Therefore, defendants are entitled to summary judgment on these claims.

5. *Unconscionability—§ 17.50(a)(3) and § 17.45(5)(A):*

The DTPA defines an "unconscionable action or course of action" as an act or practice which, to a person's detriment:

(A) takes advantage of the lack of knowledge, ability, experience, or capacity of a person to a grossly unfair degree; or

(B) results in a gross disparity between the value received and consideration paid, in a transaction involving transfer of consideration.

Unconscionability is defined not in terms of the defendant's intent or conduct, but according to the objective result of the transaction. *Sidco Prod. Mktg., Inc. v. Gulf Oil Corp.*, 858 F.2d at 1101; *Chastain v. Koonce*, 700 S.W.2d 579, 583 (Tex.1985). In the instant case, there is no indication that either NMR or Lehman took grossly unfair advantage of SOG because of any disparity of bargaining capacity between them or that the defendants grossly abused their position. SOG is a sophisticated seller of fuel blend products. Williams, a party to the agreement, has a college degree and a background in chemical engineering and also holds an MBA degree. Moreover, SOG was given the opportunity to test the fuel blend prior to acceptance. SOG claims that because it had never purchased barge slop from a barge cleaning service before, this renders it an unsophisticated purchaser. NMR, however, had never sold barge slop prior to this transaction. This was not a situation in which a seller was exerting grossly unfair advantage or power over a defenseless and unsophisticated consumer. *See, e.g., Sidco Prod. Mktg., Inc. v. Gulf Oil Corp.*, 858 F.2d at 1101; *Franks v. Associated Air Center, Inc.*, 663 F.2d 583, 593 (5th Cir.1981); *Bennett v. Bailey*, 597 S.W.2d 532, 535 (Tex.Civ.App.—Eastland 1980, writ ref'd n.r.e.).

Furthermore, the second situation in which unconscionability may arise mandates the existence of a gross disparity between the value of the goods received and the consideration paid. *Sidco Prod. Mktg., Inc. v. Gulf Oil Corp.*, 858 F.2d at 1100. SOG does not dispute the fact that it eventually sold the fuel blend for more than it paid NMR. Indeed, a review of the record reveals that NMR was paid nothing for the fuel blend. SOG subsequently sold the product to Enjet for approximately $44,000.00. There is no gross, unconscionable disparity in this situation. Thus, with respect to the claim of unconscionability, defendants' motion for summary judgment is granted.

6. *"Producing Cause"—§ 17.50(a):*

"Under any theory of recovery [under the DTPA], the plaintiff must establish a causal link between the defendant's action and the plaintiff's injury." R. ALDERMAN, THE LAWYER'S GUIDE TO THE TEXAS DECEPTIVE TRADE PRACTICES ACT 9–3 (1994). The defendants argue that contractual provisions contained in the sales agreement preclude "producing cause." The sales agreement drafted by SOG contains a merger clause which states that "there are no oral understandings, representations or warranties affecting [it]." Under traditional contract theory, the merger doctrine provides that any prior stipulations between the parties are merged into the final and formal contract they execute. *Baker v. Baker*, 207 S.W.2d 244, 249 (Tex.Civ.App.1947, writ ref'd n.r.e.).

Common law defenses, however, generally cannot defeat a DTPA claim. *See Kennemore v. Bennett*, 755 S.W.2d 89, 91 (Tex.1988); *Alvarado v. Bolton*, 749 S.W.2d 47, 48 (Tex.1988); *Weitzel v. Barnes*, 691

S.W.2d 598, 600 (Tex.1985); *Smith v. Baldwin*, 611 S.W.2d 611, 616 (Tex.1980). The DTPA does not represent a codification of common law, so common law defenses such as the merger clause are not controlling. The primary purpose of enacting the DTPA was to provide consumers with a cause of action for deceptive trade practices without the burden of proof and numerous defenses encountered in a common law suit. *Alvarado v. Bolton*, 749 S.W.2d at 48; *Smith v. Baldwin*, 611 S.W.2d at 616; *Woo v. Great Southwestern Acceptance Corp.*, 565 S.W.2d 290, 298 (Tex.Civ.App.—Waco 1978, writ ref'd n.r.e.). The purpose would be defeated by allowing contractual common law defenses to defeat such claims.

Furthermore, the merger argument is inapposite to the claim of misrepresentation of water content, because any oral representations about the water content were incorporated into the contract when the quality requirement, "as per MSDS," was included. Merger may apply when oral representations are at variance with the written agreement, but in the instant case, the oral representations do not vary from the terms of the written agreement. *Watkins v. Hammerman & Gainer*, 814 S.W.2d 867, 871 (Tex. App.—Austin 1991, no writ).

The defendants cite *First Title Co. v. Garrett*, 860 S.W.2d 74 (Tex.1993) as support for their argument that contractual limitations may defeat a DTPA claim. *First Title* is not dispositive of the issue presented here, and defendants failed to quote the court's complete holding. In the *First Title* opinion, the court stated, "Although we decline to disapprove all contractual caveats against reliance, we agree with the court of appeals that when representations are made a consumer cannot waive DTPA protection." *Id.* at 77. There is no indication that the Texas Supreme Court would approve of the alleged "contractual caveat against reliance" involved in this case to defeat plaintiff's DTPA claims.

Therefore, defendants are not entitled to summary judgment on the issue of producing cause.

III. *Conclusion.*

NMR and Lehman's motion for summary judgment is DENIED with respect to plaintiff's breach of express warranty claim. Defendants' motion for summary judgment is DENIED as to plaintiff's fraud claim based on misrepresentation of water content.

With respect to the fraud claims regarding misrepresentation of barge loading time and nondisclosure of trash, the motion for summary judgment is GRANTED.

Defendants' motion for summary judgment is DENIED with respect to the plaintiff's claim of negligence in failing to use filters or screens while loading the fuel blend. Summary judgment is GRANTED as to the remainder of the plaintiff's negligence claims.

Summary judgment is DENIED as to plaintiff's negligent misrepresentation claim based on misrepresentation of water content. With respect to the negligent misrepresentation claims regarding misrepresentation of barge loading time and nondisclosure of trash, the motion for summary judgment is GRANTED.

Defendant's motion for summary judgment is GRANTED with respect to plaintiff's claim of gross negligence.

NMR and Lehman's motion for summary judgment is DENIED with respect to the plaintiff's following DTPA claims: § 17.-46(b)(2) with respect to the claim of misrepresentation of water content; §§ 17.46(b)(5) and 17.46(b)(7) with respect to the claim of misrepresentation of water content; § 17.-46(b)(23) with respect to the claim of misrepresentation of water content; and § 17.50(a) with respect to claims of contractual limitations and producing cause.

NMR and Lehman's motion for summary judgment is GRANTED with respect to the plaintiff's following DTPA claims: § 17.-46(b)(2) with respect to the claims of misrepresentation of barge loading time and nondisclosure of trash; §§ 17.46(b)(5) and 17.-46(b)(7) with respect to the claims of misrepresentation of barge loading time and nondisclosure of trash; §§ 17.46(b)(12) and 17.-46(b)(19); § 17.46(b)(23) with respect to the claims of misrepresentation of barge loading

time and nondisclosure of trash; and §§ 17.-50(a)(3) and 17.45(5)(A).

IT IS SO ORDERED.