Affirmed as Modified and Memorandum Opinion filed May 17, 2005









Affirmed
as Modified and Memorandum Opinion filed May 17, 2005.

 

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-04-00196-CV

____________

 

CHRISTOPHER TRUSKY
AND KELLY LEE TRUSKY, Appellants

 

V.

 

ARIADNE HOLOWAY, Appellee

 



 

On Appeal from the 133rd
District Court

Harris County, Texas

Trial Court Cause No. 02-51016

 



 

M E M O R A N D U M   O P I N I O N








Christopher and Kelly Lee Trusky appeal
from a judgment favoring Ariadne Holoway on her negligence and Deceptive Trade
Practices Act causes of action.  After a
jury trial, the court awarded Holoway $4,749.50 in actual damages, plus pre-
and postjudgment interest and attorney’s fees. 
In six issues, the Truskys contend that (1) there was no evidence that
they made any negligent misrepresentations, (2) Holoway failed to present any
expert testimony regarding the standard of care for negligence; (3) there was
no evidence of a failure to disclose under the DTPA; (4) professional
negligence is not actionable under the DTPA; (5) the court erred in awarding
$1,000 in mental anguish damages because there was no evidence that the Truskys
acted knowingly; and (6) the trial court erred in awarding attorney’s fees when
the Truskys were not liable to Holoway under the DTPA.  We modify the judgment to remove the award of
mental anguish damages and affirm as modified.

Background

Holloway hired Christopher Trusky to
survey property that she intended to purchase in Pearland, Texas, and on which
she desired to build a home.[1]  Trusky reported to Holoway, among other
things, that the property was located in the 100-year flood plain; however,
Trusky failed to inform Holoway that the property was also in the floodway,
which severely restricted the type and manner of construction pursuant to
Pearland city ordinance.[2]

Holoway sued the Truskys, alleging, among
other things, negligence and deceptive trade practices.  The jury found that (1) Christopher Trusky’s
negligence proximately caused damages to Holoway; (2) Trusky did not commit
gross negligence; (3) Trusky engaged in false, misleading, or deceptive acts or
practices that caused damages to Holoway, either by failing to disclose
information or by breaching the warranty of good and workmanlike performance;
and (4) Trusky did not engage in any unconscionable action.  In response to a single, unified question on
damages, the jury found that Holoway suffered $3,749.50 in consequential
damages and $1,000 in mental anguish damages. 
The trial court entered judgment in accordance with the jury’s findings
and did not specify whether the damages were awarded pursuant to the negligence
or DTPA findings.








DTPA Claims[3]








The court’s charge authorized the jury to
find that Trusky engaged in false, misleading, or deceptive acts or practices
because either (1) he failed to disclose information about goods or services
that was known at the time of the transaction with the intention to induce
Holoway into a transaction, or (2) he breached the implied warranty of good and
workmanlike performance.  See Tex. Bus. & Com. Code Ann. §
17.46(b)(24), 17.50(a)(1)(A), (2) (Vernon 2002 & Supp. 2004).[4]  In their original brief, the Truskys did not
specifically mention the breach of warranty ground; in their reply brief, they
argue that the breach of warranty finding cannot support the judgment because
it was never pled.  However, the Truskys
do not cite any place in the record where they preserved this argument in the
trial court, by special exception, objection to evidence, or objection to the
charge.  See Tex. R. Civ. P. 67 (providing that
“[w]hen issues not raised by the pleadings are tried by express or implied
consent of the parties, they shall be treated in all respects as if they had
been raised in the pleadings”), 90 (providing that “[e]very defect, omission,
or fault in a pleading . . . which is not specifically pointed out . . . before
the instruction or charge to the jury . . . shall be deemed to have been waived
by the party seeking reversal on such account”), 274 (providing that “[a] party
objecting to a charge must point out distinctly the grounds of the objection”
and “[a]ny complaint as to a question, definition, or instruction, on account
of any defect, omission, or fault in pleading, is waived unless specifically
included in the objections”); Tex. R. App. P. 33.1(a) (providing that to preserve
a complaint for appellate review the complaining party must have made a timely
and sufficiently specific request, objection, or motion in the trial court); Murray
v. O & A Exp., Inc., 630 S.W.2d 633, 637 (Tex. 1982) (holding party
waived argument that pleadings did not support charge submission by failing to
make a timely objection to the charge on that ground); 2 Roy W. McDonald & Elaine A. Grafton Carlson, Texas Civil
Practice § 732 (2d ed. 2003) (discussing waiver of pleading omissions).

During the charge submission conference,
the Truskys’ counsel objected that four paragraphs in the DTPA liability
question were not supported by the pleadings. 
The court and both counsel then discussed each paragraph, and the court
struck three of the four paragraphs in their entireties.  Regarding the fourth objected-to paragraph,
concerning breach of warranty, the Truskys’ counsel argued that “[f]irst of
all, there was never any pleading regarding knowingly.  It was no direct question [sic] asking if the
Defendant did anything knowingly.  And as
such, it’s just not appropriate in this matter.”[5]  The trial court agreed and struck the
language regarding “knowingly” from the paragraph.  The Truskys’ counsel then asked, “Did we get
rid of knowingly?”  Holoway’s counsel
responded, “He did.”  And the Truskys’
counsel said, “Okay.  Then I will put
this back.”  Counsel and the court then
briefly discussed the damages submission, and the court asked if anything else
needed to be discussed on the record.  The Truskys’ counsel indicated that he did not
need to make any additional arguments or objections.

In summary, the trial court granted the
Trusky’s counsel all of the relief he requested in regard to the DTPA
submission.  The only objection he made
to the breach of warranty paragraph was to the inclusion of the term
“knowingly”; the court sustained the objection, and counsel had no further
objection to the warranty submission. 
Accordingly, the Truskys did not preserve the argument that the DTPA
warranty submission was not supported by the pleadings.  See Tex.
R. App. P. 33.1(a).

Professional Services Exemption








In their fourth issue, the Truskys contend
that Holoway’s DTPA claims cannot stand because they pertain to the rendering
of professional services, which are exempt from application of the DTPA.  See Tex.
Bus. & Com. Code Ann. § 17.49(c) (“Nothing in this subchapter shall
apply to a claim for damages based on the rendering of a professional service,
the essence of which is the providing of advice, judgment, opinion, or similar
professional skill.”).  There is little
case law interpreting the professional services exemption, and no Texas court
has determined whether it applies to surveyors. 
The legislative history of the exemption is not determinative of the
issue either.  While doctors, lawyers,
and certified public accountants were specifically mentioned as professionals
in the debate, surveyors were not specifically included or excluded as
professionals.  E.g., Debate on
Tex. H.B. 668 on the Floor of the House, 74th Leg., R.S. (May 3, 1995)
(comments by Chairman Seidlits and Rep. Danburg mentioning lawyers; comments by
Reps. Junell and Danburg mentioning doctors; comments by Chairman Seidlits
mentioning accountants).[6]  At least one commentator has suggested that
surveyors fall within a category of careers that did not obviously qualify for
the exemption but could be shown to qualify. 
David Skeels, The DTPA Professional Services Exemption: Let ‘em be
Doctors and Lawyers and Such, 55 Baylor
L. Rev. 783, 807 & n.115 (2003).








Even if surveyors as a group are
considered eligible professionals, the case law and commentators interpreting
the exemption have come to the logical conclusion that not every task performed
by a professional qualifies as a professional service.  See Nast v. State Farm Fire and Cas. Co.,
82 S.W.3d 114, 122 (Tex. App.—San Antonio 2002, no pet.); Richard M. Alderman, The Lawyer’s Guide to the
Texas Deceptive Trade Practices Act § 3.051 (2d ed. Dec. 2001); David F. Bragg & Michael Curry, DTPA Forms
& Practice Guide § 2.02.01 (2001); Skeels, The DTPA Professional
Services Exemption, 55 Baylor L. Rev.
at 801; Teel Bivens et al., The 1995 Revisions to the DTPA: Altering the
Landscape, 27 Tex. Tech L. Rev. 1441, 1451-52 (1996).  However, no definitive test has emerged for
determining what constitutes a professional service under the exemption.  See Nast, 82 S.W.3d at 122
(adopting definition of “professional services” used in interpreting insurance
policy exclusion in Atlantic Lloyd’s Ins. Co. of Tex. v. Susman Godfrey,
L.L.P., 982 S.W.2d 472, 476 (Tex. App.—Dallas 1998, pet. denied)); Skeels, The
DTPA Professional Services Exemption, 55 Baylor
L. Rev. at 818-21 (proposing a three-pronged test, including (1) whether
the service provider is a professional, (2) whether the essence of the service
provided required advice, judgment, opinion, or similar professional skill, and
(3) whether any of the exceptions apply).

Here, we need neither to determine
definitively whether surveyors are professionals contemplated by the exemption,
nor to formulate an exact test for determining what constitutes a professional
service under the exemption.  We find
that the Truskys have failed to sufficiently present the issue in the trial
court or on appeal.  In the trial court,
the Truskys argued the professional services exemption in their “Motion to
Withdraw Case from Jury and to Render Judgment,” which was essentially a motion
for directed verdict, and in a “Motion to Disregard the Jury Verdict.”[7]  In order to prevail on either motion, the
Truskys had to establish that they were entitled to judgment as a matter of
law.  See Wilson & Wilson Tax
Servs., Inc. v. Mohammed, 131 S.W.3d 231, 241 (Tex. App.—Houston [14th
Dist.] 2004, no pet.).  When reviewing
these motions, we consider all the evidence in the light most favorable to the
nonmovant, giving the nonmovant the benefit of all inferences arising from the
evidence.  Id.








In their motions, as proof that Trusky was
performing a professional service covered by the exemption, the Truskys
referred only to Holoway’s testimony regarding what she expected from Trusky in
performing the survey.[8]  Holoway testified somewhat inconsistently on
this issue.  She stated that she expected
Trusky to tell her about the floodway because of “professional reasons” and
that she was “disappointed that a professional . . .  missed giving me information,” but she also
said, “It’s not professional opinion. 
It’s his job.”  But, more
importantly, there is no evidence in the record that Holoway had any particular
knowledge about the work of surveyors, about how Trusky performed this
particular survey, or about the DTPA professional services exemption that would
have made her opinion on the issue relevant.








In their reply brief on appeal, the
Truskys additionally argue that the “Manual of Practice” for Texas surveyors,
an excerpt of which was produced at trial, establishes that Trusky was
performing a professional service.  Texas Society of Professional Surveyors,
Manual of Practice: for Land Surveying in the State of Texas (9th ed.
1999).  Specifically, the Truskys point
to a portion of the manual that states that a surveyor should consider and
evaluate information regarding flood plains and floodways.  See id., Category 1B, § 5.10.  The Truskys interpret this language as proof
that the service provided required advice, judgment, opinion, or similar skill
such as would qualify it under the professional services exemption.  However, we find this statement in the manual
insufficient to demonstrate the applicability of the exemption to these
circumstances.  The question here is not
simply whether the service provided by Trusky required some degree of advice,
judgment, opinion, or similar skill, as most services do; the question is
whether the essence of the service was the provision of advice, judgment,
opinion, or similar skill.  See Tex. Bus. & Com. Code Ann. §
17.49(c); see also Alderman,
supra, § 3.051.[9]  The manual mentions evaluation and
consideration but also provides considerable detail regarding the mechanical
procedures to be followed by a surveyor; thus, the manual by itself does not
affirmatively answer the essence question.[10]  Certainly, the performance and reporting of a
survey requires skill, but we cannot tell from this record whether the skill
required is of such a nature and degree as to fit under the DTPA’s professional
services exemption.  Accordingly, we find
that the Truskys have failed to demonstrate as a matter of law that the
exemption applies so as to defeat Holoway’s DTPA claims.  See Wilson & Wilson Tax Servs.,
131 S.W.3d at 241.  Their fourth issue is
overruled.

The Truskys do not make any other
arguments regarding the breach of warranty finding.  Because this finding supports the damages
awarded in the judgment, except as discussed below regarding mental anguish
damages, we need not address the Truskys’ first and second issues attacking the
negligence finding.  Accordingly, these
issues are overruled as moot.

Mental Anguish








In their fifth issue, the Truskys contend
that the trial court erred in awarding judgment for $1,000 in mental anguish
damages because there was no finding that they acted knowingly, or
alternatively, there is no evidence to support a finding that they acted
knowingly.  Under the DTPA, mental
anguish damages may be awarded only upon a finding of a knowing violation.  Tex.
Bus. & Com. Code Ann. § 17.50(b)(1).[11]

The Truskys’ first contention, that there
was no finding of knowing conduct, is incorrect.  Question no. 3 asked the jury whether Trusky
engaged in any false, misleading, or deceptive act or practice.  It defined such acts or practices as either a
breach of warranty or “[f]ailing to disclose information about goods or
services that was known at the time of the transaction with the intention to induce
another into a transaction.”  While the
breach of warranty submission did not require a knowing violation, the failure
to disclose submission did.[12]  Specifically, the latter submission required
that Trusky have known the information that he was failing to disclose and that
he intentionally failed to disclose the information to induce Holoway into a
transaction.  A person cannot
intentionally fail to disclose information without doing so knowingly.  Cf. Prudential Ins. Co. of Am. v.
Jefferson Assocs., 896 S.W.2d 156, 162-63 (Tex. 1995) (stating that a
seller cannot be liable under the DTPA for failing to disclose information that
it did not actually know); Lone Star Ford, Inc. v. Hill, 879 S.W.2d 116,
119-20 (Tex. App.—Houston [14th Dist.] 1994, no writ) (holding that same
evidence demonstrating intentional failure to disclose under DTPA also
demonstrated knowing violation); Wyatt v. Petrila, 752 S.W.2d 683, 687
(Tex. App.—Corpus Christi 1988, writ denied) (stating that knowledge is an
essential element of a failure to disclose violation under the DTPA).[13]  Thus, there was an affirmative finding of
knowing conduct.








Alternatively under this issue, the
Trusky’s argue that there is no evidence that Christopher acted knowingly in
failing to disclose information. 
Additionally, in their third issue they generally attack the sufficiency
of the evidence to support the failure to disclose finding.  We agree that there is no evidence to support
the finding of a knowing failure to disclose.

To find a failure to disclose, the jury
had to find, among other things, that Trusky knew that the property was in the
floodway at the time he failed to disclose that information to Holoway.  Trusky testified that he did not know the
property was in the floodway until after Holoway filed her lawsuit.  He said that he called the Pearland city
engineer’s office and was told that the property was in the flood plain but did
not ask and was not told that the property was in the floodway.  Holoway did not remember to whom he spoke at
the city engineer’s office.








Andrew Gallagher, an assistant city engineer for Pearland,
testified that as part of his job he takes telephone calls from surveyors and
others and gives them information regarding the flood plain and floodway.  He stated that he keeps a log of all the
telephone responses that he provides and that his log showed that he told each
person who called about the particular property that the property was in the
floodway.  However, he also stated that
he has no record of any telephone call from Trusky.  It is unclear from Gallagher’s testimony
whether he is the only person with the city engineer’s office who responds to
such phone calls.[14]  That leaves two possibilities: (1) Trusky
talked to someone else at the city engineer’s office, or (2) Trusky did not
talk to anyone at the city engineer’s office. 
If Trusky talked to someone other than Gallagher, there is no evidence
of the substance of that conversation other than Trusky’s testimony that he was
not told that the property was in the floodway. 
If Trusky did not talk to anyone at the city engineer’s office, it might
mean that he did not testify truthfully on the issue, but it does not mean that
he knew the property was in the floodway.[15]  Accordingly, we find that there is no
evidence to support the finding of a knowing failure to disclose.  See Sergeant Oil & Gas Co. v. Nat’l
Maint. & Repair, Inc., 861 F.Supp. 1351, 1362 (S.D. Tex. 1994)
(affirming summary judgment against DTPA failure to disclose claim where
defendant’s principal testified that he had no knowledge of the undisclosed
information and no evidence established that he had such knowledge); Pfeiffer
v. Ebby Halliday Real Estate, Inc., 747 S.W.2d 887, 889-91 (Tex.
App.—Dallas 1988, no writ) (affirming judgment notwithstanding the verdict
on  DTPA failure to disclose claim where
there was no evidence that listing agent had actual knowledge of foundation
problems, despite evidence of prior foundation repairs and common knowledge
among other agents regarding the foundation problems).  We sustain the Truskys’ third and fifth
issues.  Therefore, the trial court’s
judgment must be modified by deleting the $1,000 awarded as mental anguish
damages.

Attorney’s Fees

In their sixth issue, the Truskys contend
that the trial court erred in granting attorney’s fees to Holoway because they
were not liable under the DTPA.  Because,
as discussed above, we affirm the finding of DTPA liability, we overrule the
Truskys’ sixth issue.

We modify the trial court’s judgment by
removing the $1,000 awarded as mental anguish damages.  The judgment is affirmed as modified.

 

 

/s/      Adele Hedges

Chief Justice

Judgment
rendered and Memorandum Opinion filed May 17, 2005.

Panel
consists of Chief Justice Hedges and Justices Fowler and Seymore.











[1]  Although the
jury charge does not mention Kelly Trusky, the court awarded judgment against
her as well as her husband, Christopher Trusky. 
The parties make no arguments regarding the judgment against Kelly apart
from those also made regarding the judgment against Christopher; accordingly,
we do not address her liability separately from that of Christopher.  In this opinion, we use the plural term
“Truskys” when referring to both Kelly and Christopher, and we use the singular
term “Trusky” when referring only to Christopher.





[2]  Andrew
Gallagher, an assistant city engineer for Pearland, testified that no new
structures could be built in the floodway unless an engineering study proved
that there would be no adverse effect to other properties.  He estimated the cost of such a study at
$6,000 to $7,000.  He further stated that
although a house might be built on the property on stilts or pilings, it would
be very unlikely that a house could be built on a traditional slab
foundation.  He testified that the city
had granted only one permit to build in the floodway in the past six years.





[3]  Because we
hold that the judgment is, for the most part, sustainable on a DTPA ground of
recovery, we need not address the Truskys’ issues concerning the negligence
ground of recovery.





[4]  DTPA section
17.50(a)(2) provides a cause of action for when a breach of an express or
implied warranty is a producing cause of damages.  Tex.
Bus. & Com. Code Ann. § 17.50(a)(2) (Vernon 2002); Cont’l Dredging,
Inc. v. De-Kaizered, Inc., 120 S.W.3d 380, 390-91 (Tex. App.—Texarkana
2003, pet. denied).





[5]  The Truskys’
counsel acknowledged that there was some evidence in the record relating to
breach of warranty.





[6]  A representative of the Texas Society
of Professional Surveyors did testify in favor of the legislative tort reform
package, which included the professional services exemption.  An
Act Relating to Civil Remedies for Deceptive Trade Practices and Certain
Related Consumer Claims: Hearing on Tex. H.B. 668 Before the House Comm. on
State Affairs, 74th Leg., R.S. (Mar.
6, 1995).





[7]  It is
difficult to tell from the record whether these two motions were indeed
separate motions.  The Motion to Withdraw
was filed during jury deliberations but was apparently never argued on the
record.  No Motion to Disregard appears
in the clerk’s record, but the reporter’s record contains discussion relating
to the motion.  Notwithstanding the
confusing state of the record, the standards and our considerations remain the
same.  See Wilson & Wilson Tax
Servs., Inc. v. Mohammed, 131 S.W.3d 231, 241 (Tex. App.—Houston [14th
Dist.] 2004, no pet.). 





[8]  In the Motion
to Withdraw, the Truskys acknowledged that the exemption was an affirmative
defense, quoted the exemption, and then stated: “Plaintiffs own testimony
confirmed that she brought this action based upon her alleged desire to obtain
an opinion or advice regarding the flood possibilities of her property when she
employed the professional service rendered to her by Defendant in the
production of her survey.”  In argument
on the Motion to Disregard, the Truskys’ counsel stated flatly that Holoway was
“looking for . . . advice.”  The Truskys
made no further arguments and cited no additional evidence.





[9]  Alderman
compared a mechanic repairing an automobile to a lawyer preparing a will.  Alderman, supra, § 3.051.  He suggests that while the mechanic certainly
uses advice, judgment, and opinion in diagnosing the problem, the essence of
repairing the vehicle is mechanical.  Id.  Conversely, the essence of preparing a will
involves advice, judgment, and opinion, although there is some mechanical activity
in producing the document.  Id.  It is impossible to tell on the present
record where the preparation of a land survey falls in Alderman’s dichotomy.





[10]  It should be
noted as well that the particular part of the service on which Holoway claims
Trusky performed badly was obtaining and communicating the floodway
information.  Gallagher, an assistant
city engineer, testified that he often receives telephone calls from surveyors
and others asking for information on properties from the city’s maps, and he
routinely provides floodway information to them over the telephone.  He also suggested that anyone who came into
the office and could read a simple map scale (i.e., converting feet to
inches) could examine the city’s map and determine whether a property was in
the floodway.  Clearly, making a
telephone call does not require the skill of a professional, nor does reading a
simple map scale.  However, it would be
problematic to focus on this particular part of the service to the exclusion of
the land survey service as a whole.  Cf.
Duncanville Diagnostic Ctr., Inc. v. Atlantic Lloyd’s Ins. Co. of Tex., 875
S.W.2d 788, 791 (Tex. App.—Eastland 1994, writ denied) (holding that acts
causing death of patient were professional medical services covered by an
insurance policy exclusion, stating that even though the particular acts did
not require the exercise of professional medical judgment, they were an
integral part of the professional medical services provided to the patient).





[11]  Mental anguish
damages cannot be awarded in negligence cases involving property unless the
negligence was gross in nature and involved some ill-will, animus, or intention
to harm the plaintiff personally.  City
of Tyler v. Likes, 962 S.W.2d 489, 496 (Tex. 1997); Petco Animal
Supplies, Inc. v. Schuster, 144 S.W.3d 554, 561-62 (Tex. App.—Austin 2004,
no pet.); Seminole Pipeline Co. v. Broad Leaf Partners, Inc., 979 S.W.2d
730, 753‑57 (Tex. App.—Houston [14th Dist.] 1998, no pet.).  Here, the jury found that Trusky did not
commit gross negligence, and there was no allegation or evidence of ill-will,
animus, or desire to harm.  Thus, the
negligence finding could not have supported the award of mental anguish
damages.





[12]  As discussed
above, during the charge conference, Trusky specifically objected to the
inclusion of the term “knowingly” in the warranty submission, and the court
removed the term from that portion of Question No. 3.





[13]  Furthermore,
even if the jury was not effectively charged on knowingly, it would appear to
have been a deemed element since the damages submission included—and the court
awarded—mental anguish damages, which could only be awarded on a finding of
knowing conduct.  See Tex. Bus.
& Com. Code Ann. §
17.50(b)(1); Tex.
R. Civ. P. 279.  The Truskys did not object to the inclusion
of mental anguish damages in the damages submission.





[14]  When asked on
two occasions whether his office responded to requests regarding flood plains
and floodways, he replied “I do” and “Yes. 
I respond to phone calls.”





[15]  Arguably,
there is a third option:  that despite
his testimony Gallagher failed to log the call from Trusky.  However, even if this were so, there would
still be no evidence of the substance of that conversation other than Trusky’s
testimony.  Gallagher testified
specifically about each phone call he received regarding the property; he did
not testify globally that he told everyone who called about the floodway.